IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 20 CR 50013 |
| | ) | |
| TONY L. CRAIG | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Tony Craig pled guilty to a narcotics charge. The Court sentenced him to a prison term of 108 months (9 years). Mr. Craig has filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Before that, he filed a motion seeking a correction of his presentence report. The Court addresses both motions in this order.

Mr. Craig's guilty plea and sentence involved two transactions in which an informant working with law enforcement engaged in "controlled purchases" of heroin from Mr. Craig, one for just under 50 grams and one for just under 100 grams. The substance that Mr. Craig sold also contained fentanyl; more on that in a moment. Law enforcement then obtained a warrant to search Mr. Craig's home, where they found another 40 or so grams of heroin (again containing fentanyl) and about 25 grams of cocaine base.

Prosecutors obtained a one-count indictment charging Mr. Craig with knowing distribution of a controlled substance, "namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl . . ., a Schedule II Controlled Substance, and a mixture and substance containing a detectable amount of heroin, a

Schedule I Controlled Substance," in violation of 21 U.S.C. § 841(a)(1). Dkt. 10. Mr. Craig pled guilty. His plea agreement included a factual basis consistent with the way the offense was charged—in other words, he admitted that the substances he sold and possessed contained both heroin and fentanyl. But in two places the plea agreement, though perhaps subtly, shifted the description of the offense from the language used in the indictment: it said that the indictment charged Mr. Craig "with distribution of a controlled substance, namely 40 grams or more of fentanyl . . . and a mixture and substance containing heroin . . . ." Dkt. 45 ¶ 2; *see also id.* ¶ 5.

Mr. Craig's offense carried a mandatory minimum prison term of five years. His total offense level under the Sentencing Guidelines was 31, and his criminal history category was VI. The latter resulted from the fact that Mr. Craig, 29 years old at the time of sentencing, had accumulated 3 adult felony convictions—an armed robbery at age 16, a narcotics offense at age 18, and another armed robbery at age 21. More broadly, the presentence report reflected that from the age of 16 to the time of sentencing, Mr. Craig had been in custody considerably longer than he had been out of custody. He also had pending state court charges at the time of his federal sentencing.

The advisory Guidelines range for Mr. Craig's offense was 188 to 235 months, in other words about 15 1/2 years to about 19 1/2 years. This was, in large part, due to the application of the "career offender" guideline, U.S.S.G. § 4B1.1(b)(2). Before application of the career offender guideline, Mr. Craig's criminal history category would have been III (due to the vacating of a cannabis conviction, so this was different from the category IV proposed in the presentence report), and total offense level would have been 25. That would have yielded an advisory Guidelines range of 70 to 87 months

imprisonment. Application of the career offender guideline, however, increased Mr. Craig's criminal history category to VI and his total offense level to 31, resulting in the 188-to-235-month advisory range, a multiplier of over 2.5.

At the sentencing hearing, the prosecutor stated that "we don't have direct evidence that Mr. Craig knew there was fentanyl in [what he sold]." Sentencing Hrg. Tr. at 12. The Court, in pronouncing sentence, discussed the purpose behind the career offender guideline and its impact in Mr. Craig's case. The Court concluded: "I don't agree with that guideline. I mean there [are] certainly caess in which a person who is subject to the career offender guideline is somebody for whom it is appropriate to say, 'You have had your chances; we are giving up now; goodbye.' [But] [t]he career offender guideline does that in every situation where somebody has two prior violent crimes or significant controlled substance dealing offenses, and I just don't think as a categorical matter, that it's appropriate." *Id.* at 32. In Mr. Craig's case, the Court said, "I don't agree that a sentence of 15 to 20 years is appropriate" and that even though "Mr. Craig has an extraordinarily serious criminal record," "I just don't think that it's time to say we are done." *Id.* at 33. The Court then discussed that narcotics dealing "is not a victimless crime" and referenced its impact on communities: "It hurts cities; it hurts people; it hurts neighborhoods; it hurts communities . . . ." *Id.* Ultimately, the Court concluded that "it's appropriate to impose a sentence, although below the career offender guideline, not as low as what the guideline [range] would be if there was no career offender . . . . So I'm not going to go down to the 70 to 87 [months]." *Id.* at 35. The Court imposed a 108-month sentence.

The judgment and commitment order, on the first page under the heading for

imprisonment. Application of the career offender guideline, however, increased Mr. Craig's criminal history category to VI and his total offense level to 31, resulting in the 188-to-235-month advisory range, a multiplier of over 2.5.

At the sentencing hearing, the prosecutor stated that "we don't have direct evidence that Mr. Craig knew there was fentanyl in [what he sold]." Sentencing Hrg. Tr. at 12. The Court, in pronouncing sentence, discussed the purpose behind the career offender guideline and its impact in Mr. Craig's case. The Court concluded: "I don't agree with that guideline. I mean there [are] certainly caess in which a person who is subject to the career offender guideline is somebody for whom it is appropriate to say, 'You have had your chances; we are giving up now; goodbye.' [But] [t]he career offender guideline does that in every situation where somebody has two prior violent crimes or significant controlled substance dealing offenses, and I just don't think as a categorical matter, that it's appropriate." *Id.* at 32. In Mr. Craig's case, the Court said, "I don't agree that a sentence of 15 to 20 years is appropriate" and that even though "Mr. Craig has an extraordinarily serious criminal record," "I just don't think that it's time to say we are done." *Id.* at 33. The Court then discussed that narcotics dealing "is not a victimless crime" and referenced its impact on communities: "It hurts cities; it hurts people; it hurts neighborhoods; it hurts communities . . . ." *Id.* Ultimately, the Court concluded that "it's appropriate to impose a sentence, although below the career offender guideline, not as low as what the guideline [range] would be if there was no career offender . . . . So I'm not going to go down to the 70 to 87 [months]." *Id.* at 35. The Court imposed a 108-month sentence.

The judgment and commitment order, on the first page under the heading for

"Title & Section / Nature of Offense," described the offense as follows: "21 U.S.C. § 841(a)(1) Distribution of 40 Grams or More of Fentanyl and Heroin." *See* 2d Am. Judg. & Commitment Order (dkt. 107) at 1. As noted, this was an (arguably subtle) shift from the indictment's statement of the charge against Mr. Craig.

1. **Motion to correct PSR and J&C**

Now on to the pending motions. The motion to correct the judgment and commitment order (hereafter J&C) focuses on the just-quoted description of the offense. Mr. Craig seeks an amendment of the J&C so that it is consistent with the description in the indictment: distribution of "a mixture, with detectable amounts of fentanyl and a mixture with detectable amounts of heroin." Def.'s Mot. to Correct (dkt. 110) ¶ 6. The motion also asks to correct the presentence report (hereafter PSR), at paragraph 79, to remove a reference to 21 U.S.C. § 841(b)(1)(B)(vi). That paragraph of the PSR states: "Statutory Provisions: For Count One, a Class B felony, the minimum term of imprisonment is 5 years and the maximum term is 40 years. 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi)." PSR ¶ 79. Mr. Craig contends that he "was not found guilty, nor sentenced under (b)(1)(B)(vi)." Def.'s Mot. to Correct ¶ 4.

The significance of this involves the availability of supplemental good-time credits under the First Step Act. A provision of that Act awards additional good-time credits to prisoners who successively participate in "evidence-based recidivism reduction programming or productive activities" and prisoners who are "determined . . . to be at a minimum or low risk for recidivating . . . ." 18 U.S.C. § 3632(d)(4). But the statute precludes awarding the additional credits to prisoners who are "serving a sentence for a conviction under," among other provisions,

4

>Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of [fentanyl], or any analogue thereof.

18 U.S.C. § 3632(d)(4)(D)(lxvi).

It appears that BOP personnel initially determined that Mr. Craig was eligible for the additional good time credits provided under the First Step Act. More recently, however, the BOP denied award of these credits—407 days' worth, about 13 1/2 months—on the ground that he is ineligible under the just-quoted statute. Mr. Craig seeks correction of the PSR and J&C to, hopefully, remove this obstacle to awarding additional credits.

Focusing on the just-quoted language in section 3632, Mr. Craig is *not* serving a sentence "for a conviction under . . . 21 U.S.C. § 841(b)(1)." He was charged, pled guilty, and sentenced under 21 U.S.C. § 841(a)(1). That is the offense of conviction. Section 841(b)(1) is not mentioned anywhere in Mr. Craig's indictment. It is a penalty provision, not a criminal offense.

That said, section 841(b)(1) did come into play in Mr. Craig's case. Under that provision, persons whose convictions under section 841(a)(1) involve "40 grams or more of a mixture or substance containing a detectable amount of [fentanyl] or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl]" are subject to a maximum prison term of 40 years and a mandatory minimum term of 5 years. 21 U.S.C. § 841(b)(1)(B)(vi). Section 841(b)(1)(B)(vi) is the provision cited in Mr. Craig's PSR. In short, the statement in paragraph 79 of the PSR that "For Count One, a Class B felony, the minimum term of

5

imprisonment is 5 years and the maximum term is 40 years. 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi)" was correct as written.

The J&C, however, is not correct. Specifically, the statement in the J&C that described the offense of conviction as "21 U.S.C. § 841(a)(1) Distribution of 40 Grams or More of Fentanyl and Heroin" is incorrect, for the reasons the Court has discussed. The Court will correct this clerical error, *see* Fed. R. Crim. P. 36, and will cause the issuance of a third amended J&C.

It will be up to the Bureau of Prisons, in the first instance, to determine whether this has any effect on Mr. Craig's good-time credits. Award of good-time credits is up to the BOP in the first instance, *see* 18 U.S.C. § 3624(a) & (b), and any challenges must be asserted via a habeas corpus petition under 28 U.S.C. §2241, which must be brought in the district where the petitioner is confined.

**2.     Motion for compassionate release**

Next is Mr. Craig's motion for compassionate release. Mr. Craig filed his motion under section 603(b) of the First Step Act, which amended 18 U.S.C. § 3582(c)(1)(A) to provide a greater role for courts in determining whether to reduce a defendant's sentence based on "extraordinary and compelling reasons" warranting a reduction. As amended, and as applicable here, the statute provides that

> [t]he court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

6

>earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction;
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

There is a dispute over whether Mr. Craig exhausted internal BOP procedures as required by the statute. The Court is satisfied that Mr. Craig submitted at least one request for compassionate release to the appropriate warden(s) and that it was not acted upon within the 30-day period provided under the statute.

When considering a motion for compassionate release, the Court engages in a two-step process. First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Then, "[u]pon a finding that the prisoner has supplied such a reason," the Court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.* "[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). A court should consider all the reasons raised by the movant "[i]ndividually and collectively" when determining whether a prisoner has sufficiently put forth extraordinary and compelling reasons. *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Though a particular reason on its own may be "insufficient to meet the threshold," the

7

collective effect of all reasons raised by the movant may be extraordinary and compelling. *Id.*

In support of his request for compassionate release, Mr. Craig cites the aforementioned denial of 407 days of additional good-time credits, as well as his rehabilitation while imprisoned. Mr. Craig's efforts toward rehabilitation have indeed been significant, and he is to be commended for this. But under 28 U.S.C. § 944(i) and U.S.S.G. § 1B1.13(d), rehabilitation, standing alone, does not constitute an extraordinary and compelling reason for a sentence reduction under section 3582(c)(1)(A). *See, e.g., United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022).

On the good time credits issue, Mr. Craig's key point involves the government's concession that it had no evidence that he was aware of the fentanyl content of the narcotics he was selling. Largely for this reason, Mr. Craig argues, the denial of the First Step Act's additional good time credits is grossly unfair and amounts to an extraordinary and compelling reason. The Court is hard-pressed to dispute that denying good time credits in this situation is unfair. But if the effect of section 3632 is to deny the award of good time credits any time a person is *sentenced* (not "convicted") under section 841(b)(i)(B), then any unfairness is built into the statute.

As the Court noted earlier, a court must assess all of the grounds for compassionate release together, and not just separately. To put it another way, the whole may be greater than the sum of the parts. The Court is not persuaded, however, that this is such a case. Mr. Craig's efforts toward rehabilitation have been thorough and consistent, and the apparent loss (so far) of about 13 months of good time credits is unfortunate. But the Court is not persuaded that these two points together add up to a

basis for reduction that may be considered "extraordinary." The contention essentially amounts to a factor that, by statute, does not suffice by itself, combined with a second factor that Mr. Craig may challenge administratively and via a petition for habeas corpus.

The Court does not intend by this any suggestion regarding whether the BOP should, on further consideration, reconsider its denial of First Step Act good time credits. That, as the Court has stated, is up to BOP in the first instance, and it is perfectly fine with the Court if BOP determines, on further consideration, to award the credits to Mr. Craig.

For these reasons, the Court concludes that Mr. Craig is ineligible for compassionate release and thus need not address whether a reduction would be consistent with the sentencing factors set out in 18 U.S.C. §3553(a). *See Thacker*, 4 F.4th at 576.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for compassionate release [115] and grants in part and denies in part his motion to correct or amend the presentence report and the judgment and commitment order [110]. The Clerk is directed to prepare a third amended judgment and commitment order that corrects the "Title & Section / Nature of Offense" to state: "21 U.S.C. § 841(a)(1) Distribution of a mixture, with detectable amounts of fentanyl and a mixture with detectable amounts of heroin."

Date: July 28, 2025

_____
MATTHEW F. KENNELLY
United States District Judge